K. K. HALL, Circuit Judge,
dissenting:
I respectfully dissent.
The legislative history of the 1972 amendments to the L. & H.W.C.A. reveals beyond peradventure that congress intended to make a shipowner responsible for negligent injury to a longshoreman working aboard ship in the employ of a stevedore to the same extent a property owner on land would be responsible to an employee of his independent contractor.
The Committee believes that where a longshoreman or other worker covered under this Act is injured through the fault of the vessel, the vessel should be liable for damages as a third party, just as land-based third parties in non-maritime pursuits are liable for damages when, through their fault, a worker is injured.
The purpose of the amendments is to place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore, insofar as bringing a third party damage action is concerned . . .
The Committee intends that on the one hand an employee injured on board a vessel shall be in no less favorable position vis a vis his rights against the vessel as a third party than is an employee who is injured on land .
In that connection, the Committee intends that the admiralty concept of comparative negligence, rather than the common law rule as to contributory negligence, shall apply in cases where the injured employee’s own negligence may have contributed to causing the injury. H.Rep.No.92-1441, 92d Cong., 2d Sess., reprinted in [1972] U.S.Code Cong. & Admin. News pp. 4703-05.
The 1972 amendments to the L. & H.W. C.A., among other things, did the following: (1) increased employee’s level of benefits, (2) eliminated the liability of the shipowner for warranty of seaworthiness, (3) placed the injured employee in the same position as an employee injured in non-maritime employment ashore, and (4) gave the employer-stevedore a statutory lien against plaintiff’s recovery.
The first sentence of § 905(b) gives the employee a cause of action for negligence against the vessel. To recover, injury need not be caused solely by the negligence of the vessel, but may be based on any negligence which was a contributing proximate cause. This is not different from the right a land-based employee would have against the land owner. (Maritime law does give a shipowner the right to a reduction to the extent of the plaintiff’s comparative negligence, 10% or $10,000 in this case.)
The second sentence is not in conflict with the first, but simply says that the plaintiff may not base his claim against the shipowner upon the negligence of the stevedore. This provision, likewise, is in line with land-based law, and is in perfect alignment with the first sentence which gives a right of action against the vessel for its own negligence. It is to be remembered that the longshoremen’s workmen’s compensation benefits do not depend upon the negligence of the stevedore, but, like workmen’s compensation benefits for land-based workmen, are paid for injuries received on the job without proof of fault.
The common law did not permit division of damages among tortfeasors according to degrees of comparative negligence, and such change in the law should not come from the courts. Some common law states, by legislation, do permit comparative negligence among tortfeasors, but they are in the minority. Prosser, Law of Torts § 67, at 434-35 (4th Ed. 1971).
*1158 The 1972 amendments eliminate any right the vessel may have to recover over against its stevedore for damages it may have to pay to an injured longshoreman for injury aboard ship. The effect of this is to prevent contribution by the stevedore or diminution to the longshoreman for any benefits he may receive from the stevedore.
In the matter of the stevedore’s lien, I believe that the stevedore, even though negligent, has the right to be compensated out of the recovery by the longshoreman and that he has a compensation lien protecting that right.
The majority opinion seeks to obtain the “most just result.” I have no quarrel with a just result; however, it is not to be achieved in face of a constitutional act of congress. If inequities result from this statute, perhaps congress will make necessary changes to bring about more equitable results.
The district court decided this case in line with the decisions in Shellman v. United States Lines, Inc., 528 F.2d 675 (9th Cir. 1975), and Dodge v. Mitsui Shintaku Ginko K. K. Tokyo, 528 F.2d 669 (9th Cir. 1975). I believe these decisions are correct. See also Hurst v. Triad Shipping Co., 554 F.2d 1237 (3rd Cir. 1977).
Finally, the majority’s decision to depart from the established law created by congress and interpreted by our sister circuits has profound practical and policy considerations for all parties to maritime injuries— the longshoreman, the stevedoring company and the vessel owner.
For the longshoreman himself, the amount of his tort recovery now becomes totally dependent on a new and judicially created “situs test.” From the border of Washington State past Texas, Louisiana, and north to Georgia, and from Delaware to Maine, the injured longshoreman recovers a full award against a vessel, reduced only by his own contributory negligence. The maritime areas of the states which comprise the Fourth Circuit now stand alone in their reduction of the longshoreman’s damage award due to the negligence of the steve-doring company.
For the shipowners and stevedores, the result becomes equally anomalous. Shipowners, stevedoring companies and presumably the insurance industry which stands behind shipping, no matter where they are based, must all wear two hats — one for all shipments in every other judicial circuit but ours and a very special hat for the Fourth Circuit and its shipping ports.
Thus, much more than a technical difference between our sister circuits is involved; this dispute should be resolved for the benefit of all parties, small and large alike.
I would affirm.